IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALOHACARE, | ) | CIVIL NO. 08-00212 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS |
| STATE OF HAWAII, DEPARTMENT | ) | |
| OF HUMAN SERVICES and LILLIAN | ) | |
| B. KOLLER, DIRECTOR, STATE OF | ) | |
| HAWAII, DEPARTMENT OF HUMAN | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

I.      INTRODUCTION AND BACKGROUND FACTS.

Before this court is a disappointed bidder's challenge
to the process followed by the State of Hawaii in awarding a
Medicaid contract.  This court dismisses the action.

Plaintiff AlohaCare is a nonprofit health maintenance
organization ("HMO") based in Hawaii.  AlohaCare's membership
consists of federally qualified health centers ("FQHCs"), which
are community health centers that serve poor and disadvantaged
communities.  Complaint ¶ 7.

Under the Medicaid Act, 42 U.S.C. §§ 1396, et seq., a
state can contract out its Medicaid obligations with a Medicaid
managed care organization ("MMCO"), which is an HMO or its
statutorily recognized equivalent.  AlohaCare is eligible to
contract with the State as an MMCO even if it does not meet

Hawaii's HMO licensing requirements.  <u>See</u> <u>id.</u> 42 U.S.C.
§§ 1396b(m)(1)(C)(ii)(IV); (2)(B); (2)(G).  Since 1994, AlohaCare
has contracted with the State's Department of Human Services
("DHS") to provide services under QUEST, which is Hawaii's
Medicaid managed care program. Complaint ¶ 3; Motion at 24.

In September 2000, AlohaCare filed suit ("September
2000 lawsuit") against DHS, alleging that DHS's payment rate to
AlohaCare for the provision of services to native Hawaiians was
not "actuarially sound" and violated 42 U.S.C. § 1396b(m)(2)(A),
and that the payment rates discriminated against native
Hawaiians, thus allegedly violating Title VI of the Civil Rights
Act of 1964.  Order, Civ. No. 00-00637 SPK-BMK (May 3, 2001) at
1; <u>see</u> <u>also</u> Complaint ¶ 26.  DHS and AlohaCare settled the case
on March 3, 2006.  The settlement agreement provided that
AlohaCare was to "be treated fairly and reasonably in the future
in . . . dealings with DHS."  Settlement Agreement, Civ. No. 00-
00636 SPK-BMK (Mar. 3, 2006) at 2.

On October 10, 2007, DHS issued a request for proposals
("RFP") for the QUEST Expanded Access ("QUEST ExA") program.
QUEST ExA was designed to extend Hawaii's managed care plans to
cover eligible individuals in the aged, blind, and disabled
("ABD") population.  Complaint ¶ 31.  The RFP involved a two-step
evaluation process, the first step requiring a technical proposal
and the second step requiring a business proposal.  If an

applicant failed to meet all minimum technical requirements, then its business proposal would not be evaluated.  Id. ¶ 34.

On February 1, 2008, DHS awarded the contract to two providers.  The contracts had an effective date of February 15, 2008, with services to begin on November 1, 2008.  AlohaCare was not one of the winning bidders, having failed to receive passing scores in all areas of the technical review process and so not having had its business proposal considered.  Id. ¶¶ 31, 34, 41. AlohaCare subsequently filed a protest of the award with the Director of DHS, Lillian B. Koller.  Id. ¶ 44; see also Decision of Chief Procurement Officer (attached as Ex. A to Motion) (May 19, 2008) ("CPO Decision") at 5.  On March 12, 2008, Koller upheld the procurement decision.  On March 19, 2008, AlohaCare filed a request for reconsideration with the State Procurement Office, which operates independently of DHS.  CPO Decision at 1-2.

On May 8, 2008, before the State Procurement Office had ruled on the reconsideration request, AlohaCare filed this action against DHS and Koller (collectively, "Defendants").  AlohaCare alleges that Defendants (1) violated AlohaCare's First Amendment rights by refusing to award AlohaCare the QUEST ExA contract, allegedly in retaliation for AlohaCare's September 2000 lawsuit; (2) violated AlohaCare's due process rights by removing its "automatic eligibility . . . to receive a contract under the

QUEST ExA program"; (3) violated the Medicaid Act and its
regulations by awarding the contracts to providers that failed to
meet federal requirements; and (4) breached the "duty of good
faith and fair dealing implicit in each and every review of a
proposal submitted to a government agency in response to an RFP."
Complaint ¶¶ 47-51.  AlohaCare seeks to have the "awards made to
the selected contractors [declared] null and void" and to have
Defendants enjoined "from proceeding with the contracts awarded
to the two selected contractors."  AlohaCare also asks the court
to "[o]rder defendants to consider AlohaCare as fully eligible in
any and all future procurements involving QUEST and the QUEST ExA
program."  Id. ¶¶ 52A-D.  On May 9, 2008, AlohaCare filed a
motion for temporary restraining order and preliminary
injunction, since withdrawn.

On May 19, 2008, Aaron Fujioka, the Chief Procurement
Officer ("CPO"), upheld the decision of the purchasing agency,
concluding that "no evidence of a violation was found":

> There is no evidence from a review of the
> RFP, the relevant portions of AlohaCare's
> proposal, and the evaluation committee's
> score sheets that AlohaCare's technical and
> business proposals were improperly evaluated.
> . . . AlohaCare's proposal did not pass the
> technical proposal phase of the evaluation
> process; therefore, according to the RFP, its
> business proposal could not be evaluated, and
> AlohaCare's proposal could no longer be
> considered for award.

CPO Decision at 12.

4

On May 27, 2008, Defendants filed a motion to dismiss the Complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted ("Motion").

On June 10, 2008, the Hawaii Coalition for Health ("HCFH") filed a separate lawsuit in the United States District Court for the District of Hawaii against Defendants, alleging violations of statutory provisions that are at issue in this case.  Complaint, June 10, 2008, Civ. No. 08-00277 JMS-BMK.  HCFH's membership includes individuals from the ABD population.  Id. ¶ 15.

Defendants have moved to dismiss all claims.  This court held a hearing on June 18, 2008, during which AlohaCare withdrew its First Amendment claim.  Defendants contend that (1) the court lacks subject matter jurisdiction; (2) AlohaCare lacks statutory "standing" to allege violations of the Medicaid Act; (3) AlohaCare does not state a claim based on alleged constitutional violations; and (4) AlohaCare does not state a claim based on an alleged breach of the implicit duty of good faith and fair dealing.  The court concludes that (1) the court has subject matter jurisdiction; (2) AlohaCare may not assert claims based on alleged statutory violations of the Medicaid Act; (3) AlohaCare does not state a valid due process claim; and (4) AlohaCare does not state a claim based on an alleged breach of

Defendants' duty of good faith and fair dealing.  Accordingly,
the court dismisses Count Two (the due process claim), Count
Three (the Medicaid statutory claims), and Count Four (the good
faith and fair dealing claim) based on AlohaCare's failure to
state a claim.  Defendants' motion with respect to Count One (the
First Amendment claim) is moot.  To the extent anything in this
order differs from the court's oral ruling of June 18, 2008, this
order supersedes the oral ruling.

II.     LEGAL STANDARDS.

        A.    Rule 12(b)(1).

        Rule 12(b)(1) of the Federal Rules of Civil Procedure
governs dismissal of a complaint for "lack of subject-matter
jurisdiction."  Rule 12(h)(3) clarifies that, "[i]f the court
determines at any time it lacks subject-matter jurisdiction, the
court must dismiss the action."  Fed. R. Civ. P. 12(h)(3)
(emphasis added); see also B.C. v. Plumas Unified Sch. Dist., 192
F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required
sua sponte to examine jurisdictional issues such as standing.").
When a plaintiff lacks standing under the Article III "case or
controversy" requirement, federal courts lack subject matter
jurisdiction over the suit.  Cetacean Community v. Bush, 386 F.3d
1169, 1174 (9th Cir. 2004).

        "For purposes of ruling on a motion to dismiss for want
of standing, both the trial and reviewing courts must accept as

true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>see</u> <u>also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  The court does not "speculate as to the plausibility" of the plaintiff's allegations."  <u>Western Center for Journalism v. Cederquist</u>, 235 F.3d 1153, 1154 (9th Cir. 2000).

"A plaintiff needs only to plead general factual allegations of injury in order to survive a motion to dismiss, for 'we presume that general allegations embrace those specific facts that are necessary to support the claim.'"  <u>LSO, Ltd. v. Stroh</u>, 205 F.3d 1146, 1156 (9th Cir. 2000) (quoting <u>Lujan</u>, 504 U.S. at 561).

B.   <u>Rule 12(b)(6).</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001), <u>as amended by</u> 275 F.3d 1187 (9th Cir. 2001); <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996).  "Dismissal of a § 1983 claim for the lack of an enforceable right amounts to dismissal for failure to state a claim, pursuant to Federal Rule of Civil

Procedure 12(b)(6)." Day v. Apoliona, 496 F.3d 1027, 1030 (9th Cir. 2007).

On a Rule 12(b)(6) motion, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

III.    ANALYSIS.

A.    The Court Has Subject Matter Jurisdiction.

Proceeding under Rule 12(b)(1), Defendants argue that the court lacks subject matter jurisdiction. The court disagrees. AlohaCare brings a claim under the laws and Constitution of the United States and has constitutional standing.

The term "standing" is frequently used by courts to refer to different concepts. Only one of what the Ninth Circuit

8

calls "two distinct inquiries," see Cetacean Cmty., 386 F.3d at 1174, actually involves subject matter jurisdiction.  It is the first inquiry, which asks whether the plaintiff satisfies the "case or controversy" requirement of Article III, that is a constitutional inquiry.  Under this inquiry, the plaintiff "must show (1) it has suffered 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Friends of Earth, Inc, v. Laidlaw Envtl. Services (TOC), Inc., 528 U.S. 167, 180-81 (2000).  By contrast, the second inquiry involves not constitutional but statutory analysis, asking whether "a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit."  Cetacean, 386 F.3d at 1175 (quoting City of Sausalito v. O'Neil, 386 F.3d 1186, 1199 (9th Cir. 2004)).  A court reaches the issue of statutory standing only after concluding that there is constitutional standing.

        This court therefore proceeds first with examining constitutional standing.  "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  Cetacean Cmty., 386 F.3d at 1174.

9

See also Cardenas v. Anzai, 311 F.3d 929, 933 (9th Cir. 2002)
("Because standing and ripeness are threshold requirements,
without which neither the district court nor this court has
jurisdiction, we address these issues first.").

The Article III case or controversy requirement is not
a demanding inquiry.  In Bernhardt v. County of Los Angeles, 279
F.3d 862 (9th Cir. 2002), the plaintiff alleged that the county's
policy of settling federal civil rights actions for a lump sum,
including all attorneys' fees, precluded an award of statutory
fees under 42 U.S.C. § 1988, which, in turn, caused attorneys to
decline to represent her.  She claimed that the fee provisions of
42 U.S.C. § 1988 implicitly recognized her right to be
represented by a civil rights attorney.  The plaintiff had
contacted eight attorneys to represent her in a § 1983 action,
but none of the attorneys took the case.  One attorney commented
that the county's policy of lump-sum settlement was influencing
his decision not to represent her.  The district court dismissed
the case, concluding that the plaintiff's allegations did not
establish Article III injury and causation, and that the
plaintiff was engaging in "pure speculation" that a lump-sum
settlement would be offered in her § 1983 case.  See id. at 866-
67.

The Ninth Circuit reversed, concluding that the
plaintiff had met all three elements of Article III's "case or

controversy" requirement.  First, the court noted that the
"inability to obtain counsel [was] a concrete and particularized
injury."  Second, the court concluded that the plaintiff had
established a causal nexus between her injury and the challenged
action by alleging that her inability to obtain counsel resulted
directly from the county's policy.  In so concluding, the court
counseled that, on a motion to dismiss, it would not "question
the plausibility of the allegation."  Third, the court held that,
regardless of whether a change in the county's policy would
affect the decisions of the attorneys who had declined to
represent her, the plaintiff had established redressability.
"Despite the speculative nature of her claim of redressability,
however, [the plaintiff] is entitled at this stage of the
litigation to have her allegations accepted as true and therefore
we conclude that her complaint satisfied the redressability
requirement."  Id. at 869-70.

        Similarly, in Canyon County v. Syngenta Seeds, Inc.,
519 F.3d 969, 975 n.7 (9th Cir. 2008), the Ninth Circuit noted
that the causation requirement of Article III standing is not
exacting.  In that case, a county could not show "the proximate
causation that is necessary for civil RICO standing," but its
allegations were sufficient to meet "the less rigorous Article
III causation threshold."

This court concludes that AlohaCare has satisfied the Article III "case or controversy" requirement.  First, AlohaCare alleges a concrete and particularized injury in its failure to obtain a contract under the QUEST ExA program.  Second, AlohaCare traces its injury to Defendants in alleging that Defendants did not give AlohaCare's proposal fair consideration and awarded the contract to two unqualified bidders, allegedly in violation of the Medicaid Act as well as the Constitution.  The court does not here question the plausibility of the allegations and is mindful that the Article III causation inquiry is not a demanding one.  Third, AlohaCare's injury would likely be redressed by a favorable decision.  That is, if Defendants gave AlohaCare's proposal the consideration AlohaCare claims the law requires, AlohaCare would likely receive a contract under the QUEST ExA program.  Accordingly, AlohaCare has satisfied Article III's case or controversy requirement.

Although no party raises the issue of ripeness, the court notes that, at the time AlohaCare filed its Complaint, the State Procurement Office had not yet issued a final decision on AlohaCare's request for reconsideration.  The reconsideration request has since been denied.  The court concludes that AlohaCare's claims were ripe at the time the Complaint was filed and were not subject to further action by the State Procurement Office.

12

"The ripeness requirement aims 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" <u>Saks v. Office of Foreign Assets Control</u>, 466 F.3d 764, 773 (9th Cir. 2006) (quoting <u>Abbott Laboratories, Inc. v. Gardner</u>, 387 U.S. 136, 148-49 (1967)). "An action is unripe when the issues are not sufficiently concrete for judicial resolution." <u>Western Oil & Gas Ass'n v. Sonoma County</u>, 905 F.2d 1287, 1290 (9th Cir. 1990). <u>See</u> <u>also</u> <u>id.</u> ("The court inquires whether the controversy generated is essentially legal in nature or whether further factual amplication is necessary.").

AlohaCare filed a protest of Defendants' award of the QUEST ExA contracts under chapter 103-F of the Hawaii Revised Statutes, which permits a protest based on a "purchasing agency's failure to follow procedures established by this chapter, rules adopted by the policy board, or a request for proposals in selecting a provider and awarding a purchase of health and human services contract." Haw. Rev. Stat. § 103F-501. Because AlohaCare's reconsideration request was limited to issues of Defendants' compliance with state procurement principles, the Chief Procurement Officer never considered the federal statutory and constitutional claims that are before this court. <u>See</u> CPO Decision at 12 (noting that the request for reconsideration did not address AlohaCare's federal statutory claims and

13

discrimination claims because they were irrelevant to chapter 103-F of the Hawaii Revised Statutes).  The pendency of the reconsideration request could not have rendered unripe issues that were not even before the State Procurement Office on the reconsideration request.  <u>Cf.</u> <u>California Dep't of Water Resources v. Fed. Energy Regulatory Comm'n</u>, 361 F.3d 517, 518 (9th Cir. 2004) (holding that, although a party had sought agency reconsideration on some issues in an agency order, the court had jurisdiction to resolve the remaining issues that had been definitively resolved by that same agency order).

    Further, the traditional concerns behind the ripeness doctrine are not present in this case.  The issues before the court are concrete, and there is no need for further factual development.  Even if AlohaCare obtained a favorable reconsideration ruling and Defendants had been required to reconsider AlohaCare's proposal in compliance with AlohaCare's interpretation of state procurement provisions, that ruling would not have affected all of the claims before this court, which concern federal provisions governing the RFP.  The court concludes that, even though AlohaCare did not have a final decision on its reconsideration request at the time it filed its Complaint, the claims in the Complaint were ripe.

    AlohaCare has alleged violations of federal statutes and the Constitution.  <u>See</u> 28 U.S.C. § 1331 ("The district courts

14

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). This court has subject matter jurisdiction.

> B. AlohaCare Lacks Statutory Standing To Allege Violations of the Medicaid Act Raised in the Complaint.

Having found constitutional standing, this court turns to the issue of statutory standing. Defendants' challenge to AlohaCare's statutory standing falls under Rule 12(b)(6). See Canyon County, 519 F.3d at 975 n.7 ("the question of statutory standing is to be resolved under Rule 12(b)(6), once Article III standing has been established"). Accord Cetacean Cmty., 386 F.3d at 1175 ("If a plaintiff has suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted.").

In Count Three of the Complaint, AlohaCare alleges that Defendants violated various provisions of the Medicaid Act in awarding the QUEST ExA contract to the two winning bidders.

> Under 42 U.S.C. § 1983,
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

15

equity, or other proper proceeding for
redress . . . .

AlohaCare's Complaint regarding alleged Medicaid
violations does not mention § 1983.  However, because § 1983 is
the vehicle by which a private citizen may seek recovery against
public entities or officials for violations of federal laws that
do not otherwise provide for lawsuits (as well as for violations
of the United States Constitution), the court construes
AlohaCare's statutory claims as asserting claims under § 1983.
See Mitchum v. Foster, 407 U.S. 225, 242 (1972); see also City of
Oklahoma v. Tuttle, 471 U.S. 808, 816 (1985) (noting that § 1983
does not create any substantive rights, but instead "provides
remedies for deprivations of rights established elsewhere").
Section 1983, however, cannot be used to seek recovery for the
violation of agency regulations, because "agency regulations
cannot independently create rights enforceable through § 1983."
Save Our Valley v. Sound Transit, 335 F.3d 932, 939 (9th Cir.
2003).

In Maine v. Thiboutot, 448 U.S. 1, 4-5 (1980), the
Supreme Court recognized for the first time that § 1983 actions
may be brought against state actors to enforce rights created by
federal statutes.  See Gonzaga University v. Doe, 536 U.S. 273,
280 (2002); Sanchez v. Johnson, 416 F.3d 1051, 1056 (9th Cir.
2005).  Nevertheless, states and state officers in their official
capacities are immune from suits for monetary damages under

16

§ 1983 because they are not "persons" within the meaning of § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 71 (1989).  This immunity stems from the Eleventh Amendment, which bars suits against states.  See id. at 67 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity . . . .").  This immunity, however, does not preclude suits for prospective injunctive relief against a state and state officers in their official capacities.  It is just such relief that AlohaCare seeks in its Complaint.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 102-103 (1984) ("[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."); see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).

As none of the federal statutes that AlohaCare relies on provides for direct actions under those statutes, AlohaCare must establish that those statutes can be enforced under § 1983.  This court is mindful that "the remedy announced in Thiboutot [a § 1983 action against state actors] [is] to be applied sparingly and only to statutes in which Congress 'speaks with a clear

17

voice,' and 'unambiguously' creates a 'right secured by the laws of the United States.'" <u>Sanchez</u>, 416 F.3d at 1056 (quoting <u>Pennhurst State School and Hospital v. Halderman</u>, 451 U.S. 1, 17, 28 (1981)) (internal alterations omitted).  The Supreme Court has clarified that, "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State."  <u>Pennhurst</u>, 451 U.S. at 28.

In <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997), the Court provided an analytical framework for determining whether a statute creates a right enforceable under § 1983:

> (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms."

<u>Sanchez</u>, 416 F.3d at 1056-57 (internal citations omitted) (quoting <u>Blessing</u>, 520 U.S. at 340-31).

Once a plaintiff demonstrates that those factors indicate that a statute confers an individual right, the right is presumptively enforceable by § 1983.  <u>Blessing</u>, 520 U.S. at 341 ("Even if a plaintiff demonstrates that a federal statute creates

18

an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983."); see Gonzaga Univ., 536 U.S. at 284 ("Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983.").  That presumption may be rebutted by a showing that Congress "specifically foreclosed a remedy under § 1983." Blessing, 520 U.S. at 341.  "Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Id.; see also Gonzaga Univ., 536 U.S. at 285 n.4.

In 2002, in Gonzaga University, 536 U.S. at 282-83, the Supreme Court again addressed whether a federal statute conferred individual rights enforceable under § 1983.  After reviewing relevant cases, the Court noted, "Some language in our opinions might be read to suggest that something less than an unambiguously conferred right is enforceable by § 1983." Id. at 282.  The Court looked specifically at the first factor in the Blessing test, which requires courts to determine whether Congress intended that the statute "benefit" the plaintiff.  Id. The Court explained:  "In the same paragraph, however, Blessing emphasizes that it is only violations of rights, not laws, which give rise to § 1983 claims." Id. (emphases in original).  The Court stated:

19

This confusion has led some courts to
interpret <u>Blessing</u> as allowing plaintiffs to
enforce a statute under § 1983 so long as the
plaintiff falls within the general zone of
interest that the statute is intended to
protect; something less than what is required
for a statute to create rights enforceable
directly from the statute itself under an
implied private right of action.  Fueling
this uncertainty is the notion that our
implied private right of action cases have no
bearing on the standards for discerning
whether a statute creates rights enforceable
by § 1983.

<u>Id.</u> at 283.

The Court clarified the matter:

We now reject the notion that our cases
permit anything short of an unambiguously
conferred right to support a cause of action
brought under § 1983.  Section 1983 provides
a remedy only for the deprivation of "rights,
privileges, or immunities secured by the
Constitution and laws" of the United States.
Accordingly, it is rights, not the broader or
vaguer "benefits" or "interests," that may be
enforced under the authority of that section.
This being so, we further reject the notion
that our implied right of action cases are
separate and distinct from our § 1983 cases.
To the contrary, our implied right of action
cases should guide the determination of
whether a statute confers rights enforceable
under § 1983.

<u>Id.</u>

The Court then explained that a court must make the

same <u>initial</u> inquiry whether deciding if a private right of

action can be implied from a particular statute or deciding if a

statutory violation may be enforced through § 1983:

20

> We have recognized that whether a statutory violation may be enforced through § 1983 "is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute." But the inquiries overlap in one meaningful respect--in either case we must first determine whether Congress <u>intended to create a federal right.</u>

<u>Id.</u> at 283-84 (emphasis in original) (internal citations omitted). <u>See also</u> <u>id.</u> at 285 ("A court's role in discerning whether personal rights exist in the § 1983 context should therefore not differ from its role in discerning whether personal rights exist in the implied right of action context. Both inquiries simply require a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries."). <u>See</u> <u>also</u> <u>Day</u>, 496 F.3d at 1039 (quoting <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286 (2001)). "In sum, if Congress wishes to create new enforceable rights under § 1983, it must do so in clear and unambiguous terms--no less and no more than what is required for Congress to create new rights enforceable under an implied right of action." <u>Gonzaga</u>, 526 U.S. at 290.

The foregoing decisions make clear that, in determining whether AlohaCare may enforce alleged violations of the Medicaid Act under § 1983, this court must first determine whether Congress intended to confer rights upon AlohaCare under the statutory provisions that AlohaCare alleges Defendants violated.

1.   Applying the <u>Blessing</u> and <u>Gonzaga</u> Analysis to the Medicaid Act.

Under the Medicaid Act, the federal government distributes funds to states for the provision of health care services to the poor and needy.  To receive federal support, a state must comply with the requirements of the Medicaid Act and with regulations promulgated by the Department of Health and Human Services ("HHS").  42 U.S.C. § 1396a; <u>Wilder v. Virginia Hospital Ass'n</u>, 496 U.S. 498, 502; <u>see also</u> <u>Spry v Thompson</u>, 487 F.3d 1272, 1273 (9th Cir. 2007); <u>Sanchez</u>, 416 F.3d at 1054.  Some requirements under the Medicaid Act may confer private rights enforceable under § 1983, while others do not.  See <u>Sanchez</u>, 416 F.3d at 1062 ("Although 42 U.S.C. § 1396a(a) sets out a comprehensive list of requirements that a state plan must meet, it does not describe every requirement in the same language.  Some requirements . . . focus on individual recipients, while others are concerned with the procedural administration of the Medicaid Act by the States and only refer to recipients, if at all, in the aggregate."); <u>see</u> <u>also</u> <u>Ball v. Rodgers</u>, 492 F.3d 1094, 1103 (9th Cir. 2007) (noting that the court must separately consider whether the free choice provisions of the Medicaid Act create a private right action even though the equal access provisions do not).

The Medicaid Act was promulgated under Congress's spending power.  See <u>Pharmaceutical Research & Mfrs. of America</u>

v. Walsh, 538 U.S. 644, 682-83 (Thomas, J., concurring).  The
Ninth Circuit has cautioned that, "when reviewing legislation
enacted pursuant to the spending power, courts should be
especially reluctant to conclude that Congress intended to create
a new individual right enforceable against the States."  Sanchez,
416 F.3d at 1057 n.4 (citing Pennhurst, 451 U.S. at 17).

        In accordance with Blessing, this court begins its
analysis of statutory standing by examining whether "Congress . .
. intended that the provision in question benefit the plaintiff."
Blessing, 520 U.S. at 340.  "Unless Plaintiffs establish that
they are the intended beneficiaries of [the statutory provisions
at issue], they do not have an enforceable right, and cannot
maintain an action, under § 1983."  San Lazaro Assoc., Inc., v.
Connell, 286 F.3d 1088, 1098 (9th Cir. 2002).  See also Golden
State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106
(1989) (noting that, for a plaintiff to establish a violation of
a federal right under § 1983, the statutory provision at issue
must have been intended to benefit the plaintiff); Wesley Health
Care Ctr., Inc., v. De Buono, 244 F.3d 280, 283 (2d Cir. 2001)
("A plaintiff must show that the violation of the federal law
also amounts to the violation of a federal right possessed by the
plaintiff.") (cited in San Lazaro, 286 F.3d at 1098).

        In San Lazaro, decided before Gonzaga, the Ninth
Circuit considered whether 42 U.S.C. § 1396a(a)(5), Medicaid's

"single state agency requirement," conferred a right enforceable under § 1983 by providers of medical services.  Section 1396a(a)(5) mandates that a state participating in the Medicaid program "provide for the establishment or designation of a single State agency to administer or supervise the administration of the [state] plan." 42 U.S.C. § 1396a(a)(5).  California designated the California Department of Health Services as its Medicaid agency.  Providers sued under § 1983, arguing that California had violated the single state agency provision by delegating to the Controller the responsibility for conducting provider audits and the power to withhold payments to providers.  San Lazaro, 286 F.3d at 1094.  The district court concluded that the providers had an enforceable right under § 1983.  The Ninth Circuit reversed.

The Ninth Circuit explained that the provision was a "structural programmatic requirement that facilitates federal oversight of state Medicaid programs."  The provision did not create "individual entitlements," as it was not "phrased in terms that define a legal right possessed by providers" and did not "focus" on the providers.  The court recognized that, although the single state agency requirement might "ultimately benefit" providers, any benefit to providers was indirect.  Id. at 1099.  Having failed the first factor of the Blessing test, the

providers had no right under § 1983 to seek enforcement of
1396a(a)(5).

Similarly, in <u>Wesley</u>, cited by the Ninth Circuit in <u>San
Lazaro</u>, the Second Circuit concluded that health providers could
not sue to enforce 42 U.S.C. § 1396a(a)(25), Medicaid's third-
party liability provision.  New York's Medicaid program required
providers to turn over to the state any funds received from third
parties (such as private insurers) in excess of the amounts
providers were entitled to receive under Medicaid.  A provider
challenged the state program as violating the third-party
liability provision, which required that the state "take all
reasonable measures to ascertain the legal liability of third
parties"  and "seek reimbursement for such assistance to the
extent of such legal liability."  <u>See</u> 42 U.S.C.
§ 1396a(a)(25)(A), (B).  The court concluded that the provider
had no cause of action because the provision was not meant to
benefit providers but, instead, "seeks to protect the Medicaid
program from paying for health care in situations where a third
party has a legal obligation to pay for the care."  <u>Wesley</u>, 244
F.3d at 284.

Since <u>Gonzaga</u>, the Ninth Circuit has issued three
decisions concerning enforceable rights under the Medicaid Act,
only one of which, the <u>Sanchez</u> case, involved the rights of
providers.  <u>Cf.</u> <u>Ball</u>, 492 F.3d at 1117 (holding that Medicaid's

25

"free choice provisions," 42 U.S.C. §§ 1396n(c)(2)(C) and

(d)(2)(C), can be enforced through a § 1983 cause of action by

Medicaid beneficiaries); Watson v. Weeks, 436 F.3d 1152 (9th Cir.

2006) (concluding that § 1396a(a)(10) creates a private right of

action for Medicaid beneficiaries, while § 1396a(a)(17) does

not).

    In Sanchez, the court concluded that 42 U.S.C.

§ 1396a(a)(30)(A), also known as the "equal access provision" or

"§ 30(A)," does not confer enforceable rights on either providers

or Medicaid recipients under § 1983.  Section 30(A) requires a

state plan for medical assistance to provide the following:

> such methods and procedures relating to the
> utilization of, and the payment for, care and
> services available under the plan . . . as
> may be necessary to safeguard against
> unnecessary utilization of such care and
> services and to assure that payments are
> consistent with efficiency, economy, and
> quality of care and are sufficient to enlist
> enough providers so that care and services
> are available under the plan at least to the
> extent that such care and services are
> available to the general population in the
> geographic area[.]

42 U.S.C. § 1396a(a)(30)(A).

    The Ninth Circuit noted that § 30(A) "speaks not of any

individual's right but of the State's obligation to develop

'methods and procedures' for providing services generally."

Sanchez, 416 F.3d at 1059.  Section 30(A) refers to providers

only as "a means to an administrative end," not as "individual beneficiaries of the statute":

> Under § 30(A), providers are to be "enlisted" as subordinate partners in the administration of Medicaid services.  They may certainly benefit from their relationship with the State, but they are, at best, indirect beneficiaries and it would strain common sense to read § 30(A) as creating a "right" enforceable by them.

Id.  See also id. ("For a statute to create such private rights, its text must be phrased in terms of the persons benefitted." (quoting Gonzaga, 536 U.S. at 284) (internal quotations omitted)).

Because the "text and structure of § 30(A) simply do not focus on an individual . . . provider's right to benefits," the court concluded that "Congress has not spoken with an unambiguous, clear voice that would put a State on notice that Medicaid recipients or providers are able to compel state action under § 1983."  Id. at 1060.  See also Ball, 492 F.3d at 1102 ("[T]he equal access provision does not confer individual rights enforceable under § 1983 upon recipients of Medicaid funds."); Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50, 56-57 (1st Cir. 2004) ("[N]othing in subsection (30)(A) expressly provides that those who furnish Medicaid services have any enforcement rights or, indeed, have any specific rights to procedural . . . or substantive . . . protections.").  Against this backdrop, this court addresses below each of the statutory

27

provisions cited by AlohaCare and concludes that none confers an enforceable right on AlohaCare.

> 2.    The Statutory Provisions That AlohaCare
>        Raises in Its Complaint Do Not Confer Rights
>        Enforceable by AlohaCare.

In Count Three of the Complaint, AlohaCare challenges Defendants' award of the QUEST ExA program to the winning bidders, arguing that DHS violated various federal laws and regulations under the Medicaid Act when it awarded the contracts to providers that allegedly were not properly licensed and did not have an established network of providers.  Complaint ¶ 49. Because § 1983 does not allow AlohaCare to seek enforcement of agency regulations, see Save Our Valley, 335 F.3d at 939, the court here examines only the statutory provisions that AlohaCare seeks to enforce.

The court dismisses Count Three of the Complaint because AlohaCare does not have statutory standing to sue for violations of the Medicaid Act.  AlohaCare fails the first factor in the Blessing analysis, as none of the statutory provisions on which AlohaCare relies gives AlohaCare an enforceable right.  The court does not here address whether the statutory provisions confer any enforceable rights on parties not before the court, such as Medicaid beneficiaries.  However, the court later in this order does reject AlohaCare's claim to have third-party standing to assert claims on behalf of others.

        a.    42 U.S.C. §§ 1396b(m)(1)(A) and (1)(A)(i).

Section 1396b concerns federal payments to states under the Medicaid Act, and § 1396b(m) addresses which entities a state may contract with for federally supported Medicaid services:

> (m) "Medicaid managed care organization" defined; duties and functions of Secretary; payments to States; reporting requirements; remedies
>
> (1)(A) The term "medicaid managed care organization" means a health maintenance organization, an eligible organization with a contract under section 1395mm of this title or a Medicare + Choice organization with a contract under part C of subchapter XVIII of this chapter, a provider sponsored organization, or any other public or private organization, which meets the requirement of section 1396a(w) of this title and --
>
> > (i) makes services it provides to individuals eligible for benefits under this subchapter accessible to such individuals, within the area served by the organization, to the same extent as such services are made accessible to individuals (eligible for medical assistance under the State plan) not enrolled with the organization . . . .

42 U.S.C. §§ 1396b(m)(1)(A)-(I).

Section 1396b(m) does not create rights enforceable by providers.  The statute mentions providers only to set forth the qualifications a provider must meet to contract with a state to provide Medicaid services.  Having failed to show that providers are the intended beneficiaries of this provision, AlohaCare lacks statutory standing to challenge Defendants' alleged violation of this provision.

b.    42 U.S.C. § 1396u-2(b)(5).

Section 1396u-2(b) requires an MMCO to demonstrate its

ability to provide adequate services to its beneficiaries:

> (5) Demonstration of adequate capacity and
> services
>     Each medicaid managed care organization
> shall provide the State and the Secretary
> with adequate assurances (in a time and
> manner determined by the Secretary) that the
> organization, with respect to a service area,
> has the capacity to serve the expected
> enrollment in such service area . . . .

42 U.S.C. § 1396u-2(b)(5).

Instead of conferring an enforceable right on

providers, this section of the Medicaid Act imposes an obligation

on providers.  Notably, this section falls within the part of the

Medicaid Act bearing the title "Beneficiary protections," as

opposed to "Provider protections."  AlohaCare does not have an

enforceable right under this section.

c.    42 U.S.C. § 1396u-2(a)(1)(A)(ii).

Section 1396u-2(a)(1)(A)(ii) bears the heading "State

option to use managed care."  This section provides that a state

"may restrict the number of provider agreements with managed care

entities under the State plan if such restriction does not

substantially impair access to services."

AlohaCare argues that it has standing to challenge the

alleged violation of this provision on behalf of FQHCs as well as

Medicaid beneficiaries.  Opp'n at 14-15.  The court addresses the

issue of third-party standing later in this order, noting here that AlohaCare does not even allege that the provision confers an enforceable right on providers.  See id. (noting that, in allegedly violating this provision, Defendants harm Medicaid beneficiaries).

Not only is there no indication that this provision was meant to confer an enforceable right on providers, the court questions whether the provision can be said even to benefit providers when it permits a state to limit the number of providers that it contracts with.  AlohaCare therefore does not have standing on its own behalf to allege a violation of this provision under § 1983.

d.    42 U.S.C. § 1396b(m)(2)(B) and (G).

As stated earlier, § 1396b(m) defines which entities qualify as MMCOs and clarifies which entities a state may contract with to provide federally funded Medicaid services. AlohaCare qualifies as an MMCO because it "is (or is controlled by) one or more Federally-qualified health centers and meets solvency standards established by the State for such an organization."  42 U.S.C. § 1396b(m)(1)(C).

Section 1396b(m) also sets out the duties and functions of the Secretary of HHS ("Secretary"), and clarifies the conditions under which a state will be reimbursed for Medicaid services.  Specifically, § 1396b(m)(2)(A) states:

31

> no payment shall be made under this
> subchapter to a State with respect to
> expenditures incurred by it for payment . . .
> for services provided by any entity
> (including a health insuring organization)
> which is responsible for the provision
> (directly or through arrangements with
> providers of services) or inpatient hospital
> services and any other service described
> . . . unless [the following conditions are
> met].

42 U.S.C. § 1396(b)(m)(2)(A).

Subparagraph (A) states, among other conditions, that an entity providing services must satisfy the definition of an MMCO and provide services "for the benefit of individuals eligible for benefits under this subchapter." The Secretary and the state have the power to audit the entity, and the contract between a state and the entity must provide for disclosure of information. See id.

Sections 1396b(m)(2)(B) and (G) clarify that the conditions set forth in subparagraph (A) do not apply to entities such as AlohaCare that have received a grant of $100,000 under 42 U.S.C. §§ 254b(d)(1)(A) or 254c(d)(1). Thus, a state that makes payments to entities such as AlohaCare can still be reimbursed by the federal government, even if the entity fails to meet the requirements set forth in subparagraph (A).

If the Secretary determines that an entity "fails substantially to provide medically necessary items and services that are required (under the law or under contract) to be

provided to an individual covered under the contract," or if the Secretary determines that the entity violates some other provision of § 1396b(m), the Secretary may impose civil penalties on the entity directly or deny a state payment for the medical assistance furnished by the offending entity.  See id. § 1396b(m)(5).

The court concludes that this provision fails the first factor in the Blessing analysis, as providers were not the intended beneficiaries of this provision.  Rather than conferring a right on a provider to enter into a Medicaid contract with a state, the provision expands the options available to a state wishing to contract out its Medicaid services.  A state is in compliance with law and will receive federal support so long as the state contracts with an entity meeting the requirements of § 1396b(m).  AlohaCare acknowledges that the provision was meant to benefit not FQHCs or providers, but Medicaid beneficiaries, by removing "any barriers that may get in the way of FQHCs serving the individuals that constitute its patient pool."  AlohaCare recognizes that FQHC eligibility ensures that "this special group of patients gets access to care in a manner to which they need and are accustom[ed]."  Opp'n at 16-17.

In fact, this provision is similar to the equal access provision at issue in Sanchez.  The equal access provision did not focus on any individual's rights but instead on a state's

33

obligation to develop methods and procedures for providing

Medicaid services.  See Sanchez, 416 F.3d at 1059.  Similarly,

§ 1396b(m) focuses on the state's obligations to contract with

entities meeting certain requirements to qualify for federal

funding.  Although entities such as AlohaCare may certainly

benefit from being eligible to receive a Medicaid contract with a

state, any such benefit is indirect.  If anything, the state

benefits from this provision, because the provision expands the

means by which a state can comply with Medicaid requirements.

        Nor does the Senate Report that addresses this

provision establish that § 1396b(m)(2)(B) and § 1396b(m)(2)(G)

were intended to benefit providers or to confer rights

enforceable by them:

> Current law. -- States can contract with
> organizations to provide health care services
> to Medicaid beneficiaries on a prepaid
> capitated basis.  Organizations eligible to
> enter into such contracts are, in general,
> limited to Health Maintenance Organizations
> (HMO's) that are federally qualified under
> the provisions of Title XIII of the Public
> Health Service Act.  Community Health
> Centers, primarily funded by the Public
> Health Service . . . are eligible to enter
> into contracts with States to provide health
> care services to Medicaid beneficiaries on a
> prepaid, capitated basis as if they were
> federally qualified HMO's.

S. Rep. No. 99-146, at 317-18 (1985), as reprinted in 1986

U.S.C.C.A.N. 42, 284-85 (emphasis added).  The report only

indicates that the provision expands the types of organizations

34

that a state <u>can</u> contract with to provide Medicaid services.

AlohaCare is an entity that a state <u>can</u> contract with.  Nothing

in this report suggests that, in expanding the list of eligible

entities, Congress intended to benefit entities like AlohaCare,

rather than the states.  As AlohaCare fails the first inquiry

under <u>Blessing</u>, this court concludes that AlohaCare does not have

an enforceable right under this provision.

e.    <u>42 U.S.C. § 1396u-2(a)(2)(A).</u>

In general, a state may require an eligible individual

to enroll with a managed care entity, but children with special

needs are exempt from this requirement.  <u>See</u> 42 U.S.C. § 1396u-

2(a)(2)(A) ("A State may not require . . . the enrollment in a

managed care entity of an individual under 19 years of age.").

This provision protects the interests of children.

Because providers were not the intended beneficiaries, this

provision does not confer an enforceable right on AlohaCare, and

AlohaCare does not have standing to challenge Defendants' alleged

violation of this provision.[1]

---

[1] In its opposition memorandum, AlohaCare raises, for the
first time, an allegation that the terms of the § 1115 waiver
were not rational.  <u>See</u> Opp'n at 18.  Under 42 U.S.C. § 1315
(§ 1115 of the Social Security Act), the Secretary can waive
certain state plan requirements for states wishing to implement
"experimental, pilot, or demonstration" projects (a "§ 1115
waiver").  <u>See</u> 42 U.S.C. § 1315; <u>see also</u> Complaint ¶ 19.  QUEST
and QUEST ExA are demonstration projects authorized under a
§ 1115 waiver.  Complaint ¶ 20-21, 29; Motion at 1.
AlohaCare may not raise in its opposition claims not
mentioned in the Complaint.  Even if it could procedurally insert

              f.    <u>42 U.S.C. § 1396b(i)(17).</u>

AlohaCare claims a violation of 42 U.S.C. § 1396b(i)(17), which provides that federal Medicaid funds are not to be "expended for roads, bridges, stadiums, or any other item or service not covered under a State plan under this subchapter."

A restriction on how a state can use Medicaid funds cannot be said to create a right for providers, especially when the provision makes no mention of the rights of providers. Accordingly, AlohaCare lacks statutory standing with respect to this provision.

           3.    The Pre-<u>Gonzaga</u> Cases AlohaCare Cites Are <u>Distinguishable.</u>

AlohaCare argues that two pre-<u>Gonzaga</u> cases, <u>Wilder v. Virginia Hospital Association</u>, 496 U.S. 498 (1990), and <u>AlohaCare v. State of Hawaii, Department of Human Services, et al.</u> ("<u>AlohaCare I</u>"), Civ. No. 00-00637 SPK-BMK (May 3, 2001), establish that AlohaCare has standing to bring § 1983 claims based on the statutory provisions at issue.  This court concludes that neither <u>Wilder</u> nor <u>AlohaCare I</u> militates in favor of AlohaCare in the present case.

        In the first place, the Ninth Circuit has recognized the effect of <u>Gonzaga</u> on the <u>Blessing</u> analysis.  "After <u>Gonzaga</u>,

---

new claims into this action, AlohaCare would still have to establish statutory standing, which it does not do.

there can be no doubt that, to satisfy the <u>Blessing</u> test, a plaintiff seeking redress under § 1983 must assert the violation of an individually enforceable <u>right</u> conferred specifically upon him, not merely a violation of federal law . . . ." <u>Sanchez</u>, 416 F.3d at 1062.  <u>See also</u> <u>Gonzaga</u>, 536 U.S. at 300 n.8 (Stevens, J., dissenting) ("[<u>Gonzaga</u>] *sub silentio* overrules cases such as <u>Wright</u> and <u>Wilder</u>.  In those cases we concluded that the statutes at issue created rights enforceable under § 1983, but the statutes did not 'clearly and unambiguously' . . . intend *enforceability under § 1983*.").

In reaching its decision in <u>Sanchez</u>, the Ninth Circuit relied on the First Circuit's decision in <u>Long Term Care</u>, which overruled the First Circuit's holding in <u>Visiting Nurse Association of North Shore, Inc. v. Bullen</u>, 93 F.3d 997 (1st Cir. 1996), in light of <u>Gonzaga</u>.  In <u>Long Term Care</u>, the First Circuit held that § 30(A) does not give Medicaid providers a right of action.  <u>See</u> <u>Sanchez</u>, 416 F.3d at 1061.  The First Circuit noted that "[i]f <u>Gonzaga</u> had existed prior to <u>Bullen</u>, the panel could not have come to the same result."  <u>Long Term Care</u>, 362 F.3d at 59.

Similarly, Judge Samuel P. King, after ruling in <u>AlohaCare I</u>, recognized that <u>Gonzaga</u> may have changed the § 1983 analysis of the rights of providers under the Medicaid Act:

> Since that May 2001 order, the United States
> Supreme Court issued an opinion in <u>Gonzaga</u>,

37

> which some Courts have interpreted (in
> different, though related, circumstances) to
> deny a private section 1983 right to certain
> medicaid "providers."  Nevertheless, although
> it would be free to do so, this Court will
> not revisit its prior rulings from May 2001.

Order, Civ. No. 00-00637 SPK-BMK (Oct. 12, 2004)(internal
citations omitted).

As it turns out, this court need not decide whether or
how Wilder or AlohaCare I has been limited by Gonzaga and
Sanchez, because those cases involved statutory provisions that
are not before this court and are, moreover, easily
distinguishable from those in issue here.  In Wilder and
AlohaCare I, the courts concluded that providers could bring
§ 1983 claims based on certain Medicaid statutes.  The statutes
at issue in those cases concerned the reimbursement rates for
medical providers providing Medicaid services.  See Wilder, 496
U.S. at 502-03; AlohaCare I at 25-26.  Provisions regarding
reimbursements to providers are in no way analogous to the
provisions at issue here.  As the Supreme Court explained, those
provisions "explicitly conferred specific monetary entitlements
upon the plaintiffs.  Congress left no doubt of its intent for
private enforcement . . . because the provision[s] required
States to pay an 'objective' monetary entitlement to individual
health care providers."  Gonzaga, 536 U.S. at 280-81 (citing
Wilder, 496 U.S. 498).  See also Sanchez, 416 F.3d at 1056
(noting that Wilder was an "anomalous decision").  The provisions

38

AlohaCare relies on in the present case confer no such specific entitlement on providers.

> 4.   AlohaCare Does Not Have Third-Party Standing to Assert Claims on Behalf of Others.

AlohaCare claims it has third-party standing to assert claims on behalf of its FQHC members and Medicaid enrollees.  The Supreme Court has "adhered to the rule that a party 'generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (quoting Warth, 422 U.S. at 499).  "This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation."  Id.

The general rule that a party must assert its own legal rights and interests is not absolute, and the Court has recognized that "there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." Kowalski, 543 U.S. at 129.

> A litigant may assert the legal rights or interest of third parties only when (1) the litigant has suffered an injury in fact, giving him a concrete interest in the outcome of disputed issue; (2) the litigant has a close relationship to the third party; and (3) the third party's ability to protect his own interests is hindered.

Shaw v. Hahn, 56 F.3d 1128, 1129 n.3 (9th Cir. 1995) (citing Singleton v. Wulff, 428 U.S. 106, 112-116 (1976)).  See also Kowalski, 543 U.S. at 129.

It is unclear whether the doctrine of third-party standing applies to allegations of statutory violations.  The doctrine originated in a discussion of constitutional claims: "Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." Barrows v. Jackson, 346 U.S. 249, 255 (1953) (emphasis added). When third-party standing has been recognized, it has not generally involved federal statutory claims.  See e.g., Voight v. Savell, 70 F.3d 1552, 1565 (9th Cir. 1995) (listing cases--all of which involved constitutional claims--in which the Supreme Court and the Ninth Circuit have allowed third-party standing).  Even assuming third-parting standing is permitted with respect to Medicaid Act violations, AlohaCare fails to demonstrate that it has third-party standing to assert the matters in issue here.

In arguing that it can bring claims on behalf of the ABD population, AlohaCare relies on the AlohaCare I decision, in which AlohaCare was permitted to assert the rights of native Hawaiian QUEST members under Title VI of the Civil Rights Act. See AlohaCare I, Order, Civ. No. 00-00637 SPK-BMK (May 3, 2001) at 36-37.  In the previous action, AlohaCare challenged the process by which the state compensated HMOs.  AlohaCare argued

40

that the system of compensation violated Title VI because it discriminated against native Hawaiians by failing to account for the additional costs of serving the native Hawaiian population. According to AlohaCare, the "State's inadequate compensation of HMOs for their service to native Hawaiian QUEST members deters HMOs from enrolling native Hawaiians in their plans," and AlohaCare received inadequate compensation because it serviced a disproportionate number of native Hawaiians.  Id. at 36.  In AlohaCare I, Judge King recognized AlohaCare's third-party standing to assert the Title VI claims of Hawaiian QUEST members, noting that "AlohaCare . . . enroll[ed] a disproportionately high number of native Hawaiian QUEST members," and that "AlohaCare and its native Hawaiian enrollees have a common interest in prevailing on the Title VI claim."  Id. at 36-37.  The case before this court is distinguishable.

Although it is not entirely clear what relationship AlohaCare has with the ABD population, the court concludes that, on the present record, AlohaCare does not satisfy the "closeness" requirement for third-party standing.  AlohaCare says that, "on numerous occasions," ABD beneficiaries are improperly assigned to AlohaCare under the QUEST contract.  When this happens, AlohaCare must transfer the improperly assigned ABD beneficiary out of the QUEST program and into a fee-for-service program.  The transfer may take several months, during which AlohaCare is "paid for and

41

made responsible for the provision of Meidicaid services to that [ABD] beneficiary." Declaration of John McComas, June 9, 2008, ("McComas Decl.") ¶¶ 5-6. Between 1997 and 2008, AlohaCare may have provided medical coverage to approximately 2,000 Medicaid ABD beneficiaries. Id. ¶ 7. This type of relationship does not satisfy the "closeness" requirement.

In so concluding, this court is guided by the Supreme Court's discussion in Kowalski. The Court held that criminal defense attorneys lacked third-party standing to challenge the constitutionality of a Michigan statute. Under the statute, defendants who pled guilty or nolo contendere were not entitled to have court-appointed appellate counsel. The attorneys brought the challenge on behalf of hypothetical future clients, arguing a "requisite closeness" to "unascertained Michigan criminal defendants" who might be future clients. The Court concluded that, far from having a "close relationship with their alleged clients, " the attorneys had "no relationship at all." Kowalski, 543 U.S. at 131 (internal quotations omitted). The Court also concluded that the attorneys failed to show that the criminal defendants were hindered in "advancing their own constitutional rights against the Michigan scheme." The attorneys claimed that pro se criminal defendants could not effectively navigate the appeals process, but the Court pointed to previous cases in which

42

pro se defendants had challenged the statute at issue.  See id. at 132.

Even if AlohaCare has suffered an injury giving it an interest in the present litigation, AlohaCare, like the attorneys in Kowalski, does not demonstrate a close relationship with the ABD population.  AlohaCare's relationship with ABD beneficiaries apparently results at least some of the time from improper assignments of the ABD beneficiaries.  On those occasions, the relationship lasts only long enough for the assignments to be corrected.  Even when AlohaCare may serve ABD beneficiaries, AlohaCare is two steps removed from the beneficiaries it seeks to represent in this case.  AlohaCare is composed of FQHCs, and the doctors in these FQHCs are the individuals who directly service Medicaid beneficiaries.  A twice-removed relationship with ABD beneficiaries is not "close."

Significantly, AlohaCare fails to demonstrate that the ABD beneficiaries and AlohaCare have common interests with respect to the statutory claims.  See, e.g., id. at 129 ("[The third-party standing] rule assumed that the party with the right has the appropriate incentive to challenge (or not challenge) the governmental action and to do so with the necessary zeal and appropriate presentation."); see also AlohaCare I, May 3, 2001, Order at 36-37.  Regardless of whether the ABD population has a right or interest in ensuring the QUEST ExA contracts are awarded

43

to eligible organizations, AlohaCare's chief interest is not that

an eligible organization be awarded the contract but that

AlohaCare be awarded the contract.  Cf. Complaint ¶ 38 ("In the

[procurement] process, AlohaCare's strengths, including its

extensive network of providers, its cultural competence and its

acceptance in the medical community, were ignored or

minimized."); id. ¶ 48 (alleging that DHS "skew[ed] aspects of

the technical requirements away from AlohaCare's strengths and

unfairly scor[ed] AlohaCare's proposal").

In AlohaCare I, Judge King concluded that AlohaCare's

relationship with native Hawaiian QUEST recipients was

sufficiently close that AlohaCare could assert claims on their

behalf.  This conclusion was based on AlohaCare's servicing of a

"disproportionately high number of native Hawaiian QUEST members"

and on the alignment of the parties' interests.  May 3, 2001,

Order at 36-37.  Similar circumstances are not present in this

case.

This court also concludes that AlohaCare has failed to

show that those on whose behalf it seeks to proceed are hindered

in asserting their own rights.  AlohaCare fails not only to show

that ABD beneficiaries are hindered, but also that AlohaCare's

FQHC members (the other group AlohaCare seeks to represent) are

hindered.  On June 10, 2008, the Hawaii Coalition for Health

filed a complaint in the United States District Court for the

44

District of Hawaii against Defendants, alleging violations of the statutory provisions at issue in this case.  Complaint, June 10, 2008, Civ. No. 08-00277 JMS-BMK.  The Hawaii Coalition for Health is an organization that includes individuals in the ABD population as well as doctors who serve Medicaid beneficiaries. Although it is not clear from the complaint, the Hawaii Coalition for Health may include FQHCs, or at least doctors who work in FQHCs.  See id. ¶¶ 15-16.  In any event, AlohaCare does not meet its burden of showing that FQHCs are hindered in asserting their own rights.  The very existence of this separate lawsuit indicates that the entities AlohaCare seeks to represent are in no way hindered from suing for themselves.  AlohaCare lacks third-party standing to assert Medicaid violations on their behalf.

>           C.    AlohaCare Does Not State A Valid Constitutional
>                 Claim.

>                 1.    The First Amendment Claim Has Been Withdrawn.

AlohaCare claims that its First Amendment rights were violated when DHS "unfairly failed and refused to award AlohaCare a contract under the QUEST ExA program in retaliation for AlohaCare's having prosecuted its earlier suit against DHS." Complaint ¶ 47.  At the hearing on the present motion, AlohaCare withdrew this First Amendment claim without prejudice. Defendants' motion to dismiss AlohaCare's First Amendment claim has thus been rendered moot.  The court notes that, at the

45

hearing, Defendants agreed to toll the statute of limitations on the First Amendment claim pending completion of any appellate proceedings related to the present order.[2]

> 2.    AlohaCare Does Not State A Valid Procedural Due Process Claim.

AlohaCare alleges that DHS deprived it of a liberty/property interest without due process of law, in violation of the Fifth and Fourteenth Amendments, when "DHS removed the automatic eligibility conferred by federal law on AlohaCare to receive a contract under the QUEST ExA program by imposing certain 'corporate experience' related requirements in the RFP, by skewing aspects of the technical requirements away from AlohaCare's strengths and unfairly scoring AlohaCare's proposal." Complaint ¶ 48. The court treats the due process claim as brought under § 1983.

> a.    AlohaCare Does Not Identify An Interest That Triggers Due Process Protections.

A plaintiff bringing a due process claim must show that there is a protected property or liberty interest at stake. Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Schroeder v. McDonald, 55 F.3d 454, 462 (9th Cir. 1995).

---

[2] AlohaCare also attempted to invoke its rights under the 2006 Settlement Agreement reached in AlohaCare I by arguing that Defendants violated their obligation to consider AlohaCare fairly in the award of the QUEST ExA program. As AlohaCare did not raise this claim in its Complaint, the court declines to address it here.

AlohaCare identifies no such interest. AlohaCare does not clearly articulate whether it is a property interest or a liberty interest that it is claiming has been violated.  Instead, it simply cites 42 U.S.C. § 1396b(m) as the source of its interest.  Section 1396b(m) creates neither a property right nor a liberty right entitling AlohaCare to due process protections.

"Property interests . . . are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577; see also Orloff v. Cleveland, 708 F.2d 372, 377 (9th Cir. 1983) ("Entitlements are created by 'rules or understandings' from independent sources, such as statutes, regulations, and ordinances, or express or implied contracts.").  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

Property interests are "determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Assoc. of Orange County Deputy Sheriffs v. Gates, 716 F.2d 733, 734 (9th Cir. 1983).  In Cassidy

47

v. Hawaii Dep't of Transp., Harbors Div., 915 F.2d 528 (9th Cir. 1990), the Ninth Circuit concluded that a mooring permit issued under section 19-62-5 of the Hawaii Administrative Rules[3] was not a property right protected by the Fourteenth Amendment because the Harbors Division reserved the discretion to renew the permit. Id. at 531; see also Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465 (1981).

Similarly, in Gates, the court held that section 12031(b) of the California Penal Code, which permits retired peace officers to carry a loaded firearm, did not give a retired officer a property interest. Recognizing that the privilege could be revoked only for "good cause," the court stated that "the requirement of 'good cause' prior to the denial of a weapons certificate does not create a constitutionally protected interest, because it is not a 'significant substantive restriction on the basis for [the] agency's action.'" Gates, 716 F.2d at 734 (quoting Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980)) (alteration in quotation).

No property interest in a Medicaid contract arises under 42 U.S.C. § 1396b(m). Defendants were not required by § 1396b(m) to award AlohaCare a Medicaid contract. Not only did

---

[3] Section 19-62-5(a) of the Hawaii Administrative Rules provides that the department "may" approve an application for permit renewal after a fourteen-day absence. See Haw. Admin. R. § 19-62-5 (emphasis added).

Defendants have the discretion to decide which qualifying entities to contract with, they had the discretion to determine whether to contract out Medicaid services at all.

AlohaCare misconstrues the interest at stake by alleging that it has "automatic eligibility . . . to receive a contract under the QUEST ExA program." The statutory provision on which AlohaCare relies simply makes AlohaCare eligible to receive the QUEST ExA contract. It does not require Defendants to award AlohaCare the contract. In fact, even AlohaCare recognizes that § 1396b(m) only enables AlohaCare to participate in Medicaid as if it were a "federally qualified HMO." See Opp'n at 16. Thus, AlohaCare enjoys the status of any other entity eligible to receive a Medicaid contract. AlohaCare does not even allege that Defendants violated § 1396b(m) by imposing on AlohaCare the requirements listed in § 1396b(m)(2)(A), which AlohaCare is otherwise exempt from. AlohaCare is entitled to the same procedural protections as any other entity eligible to contract with Defendants for a Medicaid contract.

AlohaCare similarly fails to identify a liberty interest. The cases cited by AlohaCare hold that a liberty interest may be implicated in the context of government employment or government contracts when the plaintiff is barred from all public employment, or when government action is accompanied by a harm to reputation that carries a "stigma of

moral turpitude." <u>See</u> Opp'n at 21-22 (citing <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 907 (9th Cir. 1993) ("Charges that carry the stigma of moral turpitude such as dishonesty or immorality may implicate a liberty interest, but charges of incompetence of inability to get along with others do not.") (internal quotations omitted); <u>Matthews v. Harney County, Oregon, Sch. Dist. No. 4</u>, 819 F.2d 889, 891 (9th Cir. 1987) ("[A] liberty interest is implicated in the employment termination context if the charge impairs a reputation for honestly or morality . . . ."); <u>Old Dominion Dairy Products, Inc. v. Secretary of Defense</u>, 631 F.2d 953, 962 (D.C. Cir. 1980) (recognizing a due process liberty interest when the "Government effectively bars a contractor from virtually all Government work")).

Defendants did not deprive AlohaCare of its eligibility to receive a Medicaid contract by failing to consider AlohaCare's proposal or by completely barring AlohaCare from submitting an application.  Nor does AlohaCare allege that Defendants harmed its reputation in failing to award AlohaCare the QUEST ExA contract.  Accordingly, AlohaCare fails to establish a due process violation with respect to a liberty interest.

       b.    AlohaCare Is Not Entitled to the
           <u>Procedural Protections It Seeks.</u>

Even assuming AlohaCare had a protected property or liberty interest, AlohaCare has not shown that it was entitled to procedural protections over and above those accorded it.  Due

50

process requires notice and an opportunity to be heard.  See e.g., Roth, 408 U.S. at 570 n.7.  "Due process is a flexible concept and its procedural requirements vary depending upon the particular deprivation." Orloff, 708 F.2d at 378.  In Matthews v. Eldridge, 424 U.S. 319, 335 (1976), the Supreme Court set forth a three-factor balancing test for determining the procedures that satisfy due process: (1) the private interest at stake; (2) the risk of "erroneous deprivation" through the procedures employed; and (3) the "fiscal and administrative burdens" that additional procedural safeguards would entail. There is no dispute that AlohaCare was allowed to submit a proposal, that its proposal was reviewed and scored, and that AlohaCare appealed Defendants' decision not to award it the QUEST ExA contract, first by submitting a protest to Director Koller and then by submitting a request for reconsideration to CPO Fujioka.  Both Koller and Fujioka reviewed AlohaCare's submissions, and both upheld the procurement decision.

AlohaCare therefore does not complain that it was deprived of notice or opportunity.  Nor does AlohaCare allege that the protest process--during which the procurement decision was reviewed at two levels, first by Koller, then by CPO Fujioka --was faulty.  Instead, AlohaCare challenges the fairness of the procurement process itself, arguing that DHS should have allocated more points in the scoring process to "AlohaCare's

strengths."  Complaint ¶ 48.  AlohaCare asks the court to require allocation of points in accordance with AlohaCare's strengths. AlohaCare thus asks the court to insert itself into the state procurement process and to rewrite the point system, emphasizing some subject matters and de-emphasizing others.  Given the absence of law authorizing or requiring a particular point system, this court is ill-equipped for such an exercise.

AlohaCare attempts to characterize its challenge to the procurement process as a due process claim by arguing that its eligibility to contract with the State for Medicaid services entitled it to a fair procurement process.  But AlohaCare does not cite to any legal authority establishing that an entity eligible to contract with a state is entitled to be evaluated under a particular point system.  Instead, AlohaCare cites to 45 C.F.R. § 92.36, which addresses "Uniform Administrative Requirements for Grants and Cooperative Agreements to the State, Local, and Tribal Governments," arguing that the procurement process may not be conducted in a manner "considered to be restrictive of competition," including "any arbitrary action in the procurement process."  See Opp'n at 22-23 (citing 45 C.F.R. § 92.36(c)(1)(vii)).

AlohaCare's contentions are unavailing.  As Defendants point out, the provisions that AlohaCare relies on do not apply to state contracts.  Instead, it is section 92.36(a) that sets

forth the requirements applicable to state contracts: "When procuring property and services under a grant, a State will follow the same policies and procedures it uses for procurements from its non-Federal funds. . . . Other grantees and subgrantees will follow paragraphs (b) through (i) in this section."  45 C.F.R. § 92.36(a).  Thus, the provisions prohibiting "arbitrary actions" or actions considered to be "restrictive of competition" in the procurement process apply to grantees and subgrantees other than the State, and clearly do not apply to Defendants in this case.  See id.  Even if the regulations applied to Defendants' procurement process, the Ninth Circuit has made clear that federal regulations do not create individual federal rights that can be enforced through § 1983.  Save Our Valley, 335 F.3d at 939.

More problematically, AlohaCare's recasting of its challenge to the procurement process as an alleged due process violation runs into the problem of standing.  The Ninth Circuit has previously recognized that a disappointed bidder does not have standing to challenge the award of a state contract as failing to comply with federal procurement policy set forth in federal regulations.  Big Country Foods, Inc. v. Board of Educ. of the Anchorage School District, 952 F.2d 1173, 1176 (9th Cir. 1992); see also Sowell's Meats and Services, Inc., v. McSwain, 788 F.2d 226, 228 n.2 (4th Cir. 1986).  As the court has already

53

determined, § 1396b(m) does not confer any special status on AlohaCare; instead, it only makes AlohaCare eligible to receive Medicaid contracts with the state.  Big Country precludes entities not awarded a contract from challenging the procurement process under federal regulations.  Thus, even if 45 C.F.R. § 92.36(c) applies to state contracts, AlohaCare cannot challenge the QUEST ExA procurement process as violating federal regulations.

> D.   The Court Dismisses AlohaCare's Good Faith and Fair Dealing Claim.

In the Complaint, AlohaCare claims that the "duty of good faith and fair dealing is implicit in each and every review of a proposal submitted to a government agency" and that Defendants allegedly breached this duty by failing to "accord full consideration to AlohaCare's eligibility under federal law." Complaint ¶ 51.  Defendants complain that AlohaCare "cites no authority for its claim that [DHS] has an 'implicit duty' of good faith and fair dealing" in the procurement process.  Motion at 30.  AlohaCare fails to respond to Defendants' argument.

Identifying no federal law as the source of this claim, AlohaCare may be relying on state common law.  If that is so, then the court questions whether state common law is preempted by federal Medicaid provisions.  Even if a state common law claim is cognizable, this court declines to exercise supplemental jurisdiction over such a claim, having dismissed all federal

claims.  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173 (1997) (noting that a district court's exercise of supplemental jurisdiction over state claims is discretionary); see also United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966) ("[When] the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the [pendent] state claims should be dismissed as well.").  In short, given AlohaCare's failure to identify the source of this claim and the court's discretion if this is a state claim, the court dismisses this claim.

IV.      CONCLUSION.

        For the foregoing reasons, the court grants Defendants' motion to dismiss.  The Clerk of Court is directed to enter judgment for Defendants and to close this case.


        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, July 2, 2008.



                            /s/ Susan Oki Mollway
                            Susan Oki Mollway
                            United States District Judge


ALOHACARE v. STATE OF HAWAII, et. al., Civ. No. 08-00212 SOM/BMK; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS